UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **DENISE LAIRD-JONES,** ) | |
| ) | |
| Plaintiff, ) | Case No. 3:13-cv-00305-SI |
| ) | |
| v. ) | **OPINION AND ORDER** |
| ) | |
| **CAROLYN W. COLVIN**, ) | |
| Acting Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |
| _____) | |

Karen Stolzberg, 11830 S.W. Kerr Parkway, #310, Lake Oswego, OR 97035. Attorney for Plaintiff.

S. Amanda Marshall, United States Attorney, and Ronald K. Silver, Assistant United States Attorney, United States Attorney's Office, District of Oregon, 1000 S.W. Third Avenue, Suite 600, Portland, OR 97204-2902; Kathy Reif, Special Assistant United States Attorney, Office of the General Counsel, Social Security Administration, 701 Fifth Avenue, Suite 2900 M/S 221A, Seattle, WA 98104-7075. Attorneys for Defendant.

**SIMON, District Judge**.

Denise Larid-Jones seeks judicial review of the final decision of the Commissioner of the

Social Security Administration ("Commissioner") denying her application for Social Security

Income ("SSI") and Disability Insurance Benefits ("DIB"). Because the Commissioner's decision is not supported by substantial evidence, the decision is REVERSED and REMANDED for further proceedings consistent with this opinion.

## I.    BACKGROUND

### A.    The Application

Ms. Laird-Jones filed applications for SSI and DIB on February 22, 2010, alleging disability as of January 3, 2007. AR 184-94. Born on September 10, 1971, Ms. Laird-Jones was 35 years old on the alleged disability onset date. AR 41, 184. She has a high school education and past work experience as a retail cashier, childcare attendant, and stocker. AR 54, 62-3. The Commissioner denied her application initially and upon reconsideration, and she requested a hearing before an Administrative Law Judge ("ALJ"). AR 147-48. After an administrative hearing, held on September 21, 2011, the ALJ found Ms. Laird-Jones not to be disabled. AR 23-31. The Appeals Council denied Ms. Laird-Jones' subsequent request for review on January 4, 2013. AR 1-5. The ALJ's decision thus became the final decision of the Commissioner, and Ms. Laird-Jones sought review in this Court.

### B.    The Sequential Analysis

A claimant is disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011); *see also* 20 C.F.R. § 404.1520 (DIB); 20 C.F.R. § 416.920 (SSI); *Bowen v. Yuckert*, 482 U.S. 137, 140

(1987). Each step is potentially dispositive. 20 C.F.R. §§ 404.1520(a)(4); 416.920(a)(4). The five-step sequential process asks the following series of questions:

1. Is the claimant performing "substantial gainful activity?" 20 C.F.R. §§ 404.1520(a)(4)(i); 416.920(a)(4)(i). This activity is work involving significant mental or physical duties done or intended to be done for pay or profit. 20 C.F.R. §§ 404.1510; 416.910. If the claimant is performing such work, she is not disabled within the meaning of the Act. 20 C.F.R. §§ 404.1520(a)(4)(i); 416.920(a)(4)(i). If the claimant is not performing substantial gainful activity, the analysis proceeds to step two.

2. Is the claimant's impairment "severe" under the Commissioner's regulations? 20 C.F.R. §§ 404.1520(a)(4)(ii); 416.920(a)(4)(ii). Unless expected to result in death, an impairment is "severe" if it significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1521(a); 416.921(a). This impairment must have lasted or must be expected to last for a continuous period of at least 12 months. 20 C.F.R. §§ 404.1509; 416.909. If the claimant does not have a severe impairment, the analysis ends. 20 C.F.R. §§ 404.1520(a)(4)(ii); 416.920(a)(4)(ii). If the claimant has a severe impairment, the analysis proceeds to step three.

3. Does the claimant's severe impairment "meet or equal" one or more of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, then the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii); 416.920(a)(4)(iii). If the impairment does not meet or equal one or more of the listed impairments, the analysis proceeds beyond step three. At that point, the ALJ must evaluate medical and other relevant evidence to assess and determine the claimant's "residual functional capacity" ("RFC"). This is an assessment of work-related activities that the claimant may still perform on a regular and continuing basis, despite any limitations imposed by his or her impairments. 20 C.F.R. §§ 404.1520(e); 404.1545(b)-(c); 416.920(e); 416.945(b)-(c). After the ALJ determines the claimant's RFC, the analysis proceeds to step four.

4. Can the claimant perform his or her "past relevant work" with this RFC assessment? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv); 416.920(a)(4)(iv). If the claimant cannot perform his or her past relevant work, the analysis proceeds to step five.

5. Considering the claimant's RFC and age, education, and work experience, is the claimant able to make an adjustment to other work that exists in

>significant numbers in the national economy? If so, then the claimant is not disabled. §§ 404.1520(a)(4)(v); 416.920(a)(4)(v); 404.1560(c); 416.960(c). If the claimant cannot perform such work, he or she is disabled. *Id.*

*See also Bustamante v. Massanari,* 262 F.3d 949, 954 (9th Cir. 2001).

The claimant bears the burden of proof at steps one through four. *Id.* at 953; *see also Tackett v. Apfel,* 180 F.3d 1094, 1100 (9th Cir. 1999); *Yuckert*, 482 U.S. at 140-41. The Commissioner bears the burden of proof at step five. *Tackett,* 180 F.3d at 1100. At step five, the Commissioner must show that the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Id.*; *see also* 20 C.F.R. §§ 404.1566; 416.966 (describing "work which exists in the national economy"). If the Commissioner fails to meet this burden, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v); 416.920(a)(4)(v). If, however, the Commissioner proves that the claimant is able to perform other work existing in significant numbers in the national economy, the claimant is not disabled. *Bustamante,* 262 F.3d at 953-54; *Tackett*, 180 F.3d at 1099.

C.     **The ALJ's Decision**

The ALJ performed the sequential analysis. At step one, he found that Ms. Laird-Jones had not engaged in substantial gainful activity since January 3, 2007. AR 25. At step two, the ALJ concluded that Ms. Laird-Jones had the following severe impairments: affective disorder, anxiety disorder, and rule out alcohol abuse. *Id*. At step three, the ALJ determined that Ms. Laird-Jones did not have an impairment or combination of impairments that met or medically equaled a listed impairment. *Id*.

The ALJ next assessed Ms. Laird-Jones's residual functional capacity ("RFC") and found that while Ms. Laird-Jones could physically perform the full range of light work, she was limited

Page 4 – OPINION AND ORDER

to occasional interaction with the public and coworkers; simple, routine tasks; and should avoid concentrated exposure to hazards. AR 27. At step four, the ALJ found that Ms. Laird-Jones was unable to perform any past relevant work. AR 30. At step five, based on the testimony of a vocational expert ("VE"), the ALJ concluded that Ms. Laird-Jones could perform jobs that exist in significant numbers in the national economy, including small products assembler and housekeeper/cleaner. AR 31. Accordingly, the ALJ found Ms. Laird-Jones was not disabled. *Id.*

## II.    STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if it is based on the proper legal standards and the findings are supported by substantial evidence. 42 U.S.C. § 405(g); *see also Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). "Substantial evidence" means "more than a mere scintilla but less than a preponderance." *Bray v. Comm'r Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Andrews*, 53 F.3d at 1039).

Where the evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is a rational reading of the record, and this Court may not substitute its judgment for that of the Commissioner. *See Batson v. Comm'r*, 359 F.3d 1190, 1193 (9th Cir. 2004). "However, a reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006)

(internal quotations omitted)). The reviewing court, however, may not affirm the Commissioner on a ground upon which the Commissioner did not rely. *Id.*; *see also Bray*, 554 F.3d at 1226.

### III.    DISCUSSION

Ms. Laird-Jones argues that the ALJ erred by (1) rejecting the opinion of Isabel Toledo, P.M.H.N.P.; (2) improperly evaluating the medical evidence; (3) failing at step two to find her agoraphobia and panic disorder to be severe; (4) finding her to be not credible; (5) improperly rejecting the lay witness testimony; and (6) formulating an incorrect RFC.

#### A.    Lay Opinion of Ms. Toledo

Ms. Laird-Jones challenges the ALJ's rejection of the opinion of Isabel Toledo, a treating nurse practitioner. As a nurse practitioner, Ms. Toledo is an "other" source under the Regulations and the ALJ was required to provide "germane reasons" for rejecting her opinion. 20 C.F.R. §§ 404.1513(d)(1), 416.913(d)(1); *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001) (citing *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996)). An ALJ need not discuss every witness's testimony, and "if the ALJ gives germane reasons for rejecting testimony by one witness, the ALJ need only point to those reasons when rejecting similar testimony by a different witness." *Molina v. Astrue*, 674 F.3d 1104, 1114 (9th Cir. 2012) (citing *Valentine v. Comm'r,* 574 F.3d 685, 694 (9th Cir. 2009)).

Ms. Toledo completed a mental status report on Ms. Laird-Jones on September 24, 2009, diagnosing major depressive disorder and anxiety not otherwise specified ("NOS") with occasional panic attacks, isolation, fearfulness, restricted activities, unexpected suicidal ideation, and poor stress tolerance. AR 395-96. Ms. Toledo completed a medical source statement on September 14, 2011, opining that Ms. Laird-Jones was able to adhere to basic standards of

Page 6 – OPINION AND ORDER

neatness and cleanliness, but that her abilities in every other category of mental functioning were "poor to very poor." AR 425-30.

The ALJ rejected Ms. Toledo's opinion because her treatment records did not support the degree of limitations she assessed. AR 26. For example, despite her opinion that Ms. Laird-Jones' mental functioning was "poor to very poor" in almost every category, Ms. Toledo's treatment notes described Ms. Laird-Jones as having good memory and eye contact, and logical, sequential, and coherent thought processes. AR 365. Ms. Toledo also noted that Ms. Laird-Jones was alert, oriented, clear, logical, and concise despite her abnormal affect. AR 353, 394, 396, 410, 412-13, 417. These findings are inconsistent with and thus undermine the degree of mental limitations Ms. Toledo assessed. The ALJ thus provided a germane reason for rejecting Ms. Toledo's opinion as to the severity of Ms. Laird-Jones' mental limitations.

**B.     Medical Opinion of Dr. Karen Bates-Smith**

Ms. Laird-Jones argues that the ALJ improperly ignored the opinion of Dr. Karen Bates-Smith. The ALJ is responsible for resolving conflicts in the medical record, including conflicts among physicians' opinions. *Carmickle v. Comm'r*, 533 F.3d 1155, 1164 (9th Cir. 2008). The Ninth Circuit distinguishes between the opinions of three types of physicians: treating physicians, examining physicians, and non-examining physicians. The opinions of treating physicians are generally accorded greater weight than the opinions of non-treating physicians. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). A treating doctor's opinion that is not contradicted by the opinion of another physician can be rejected only for "clear and convincing" reasons. *Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir. 1991).

If a treating doctor's opinion is contradicted by the opinion of another physician, the ALJ must provide "specific, legitimate reasons" for discrediting the treating doctor's opinion. *Murray*

Page 7 – OPINION AND ORDER

*v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983). In addition, the ALJ generally must accord greater weight to the opinion of an examining physician than that of a non-examining physician. *Lester*, 81 F.3d at 830. As is the case with the opinion of a treating physician, the ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of an examining physician. *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir. 1990). If the opinion of an examining physician is contradicted by another physician's opinion, the ALJ must provide "specific, legitimate reasons" for discrediting the examining physician's opinion. *Lester*, 81 F.3d at 830. Specific, legitimate reasons for rejecting a physician's opinion may include its reliance on a claimant's discredited subjective complaints, inconsistency with medical records, inconsistency with a claimant's testimony, and inconsistency with a claimant's daily activities. *Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th Cir. 2008); *Andrews*, 53 F.3d at 1034. It is error to ignore an examining physician's medical opinion without providing reasons for doing so. An ALJ effectively rejects an opinion when he ignores it. *Smolen v. Chater*, 80 F.3d 1273, 1286 (9th Cir. 1996).

     Dr. Bates-Smith diagnosed Ms. Laird-Jones with major depressive disorder, panic disorder, and rule out alcohol abuse. AR 373. She noted that Ms. Laird-Jones had a panic attack during one visit that lasted about 15 seconds. AR 372. Dr. Bates-Smith also opined that Ms. Laird-Jones was depressed, with flat affect. AR 369-74, 400. State agency psychologist Robert Henry, Ph.D., relied upon Dr. Bates-Smith's opinion in assessing her residual functional capacity. Dr. Henry stated that Ms. Laird-Jones can consistently remember 3-4 step instructions, occasionally remember more detailed instructions, and is limited to work with no frequent or close contact with the public or coworkers. AR 85-87, 89-90.

The Commissioner argues that the ALJ "accepted" Dr. Bates-Smith's opinion because he incorporated Dr. Henry's limitations into the RFC. *See* AR 29 (granting "significant weight" to Dr. Henry's opinion, stating "[i]t is supported by the evaluation of Dr. Bates-Smith"). The ALJ, however, did not include limitations related to Ms. Laird-Jones' panic disorder or account for Dr. Bates-Smith's observation of Ms. Laird-Jones' panic attack. The ALJ ignored, and thus rejected, Dr. Bates-Smith's opinions regarding Ms. Laird-Jones' limitations, which was error. *See Smolen*, 80 F.3d at 1286.

**C.     Step Two Findings**

Ms. Laird-Jones next argues that the ALJ erred at step two because he failed to find her panic disorder to be severe. At step two, the ALJ determines whether the claimant has a medically severe impairment or combination of impairments; step two findings must be based upon medical evidence. 20 C.F.R. § 416.920(a). An impairment is "not severe" if it "does not significantly limit [the claimant's] ability to do basic work activities." *Id.* "Omissions at step two are harmless if the ALJ's subsequent evaluation considered the effect of the impairment omitted at step two." *Harrison v. Astrue*, 2011 WL 2619504, *7 (D. Or. July 1, 2011) (citing *Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007)).

Here, the ALJ found that Ms. Laird-Jones' impairments do not satisfy the criteria for a listed impairment. The ALJ rejected Ms. Laird-Jones' credibility regarding the nature and severity of her limitations, and noted that Ms. Laird-Jones' panic attacks were "mostly controlled with Paxil" and that Clonodine was "helpful." The ALJ, however, acknowledged that Ms. Laird-Jones suffered from a panic disorder. He was therefore required to evaluate the limitations associated with that disorder at step two. Further, because the ALJ did not incorporate those limitations into the RFC, his error at step two was not harmless. *Harrison*, 2011 WL 2619504 at

*7. Specifically, the ALJ failed to consider the limitations on concentration, persistence, or pace during Ms. Laird-Jones' panic attacks and how those limitations could affect her ability to perform work in the national economy.

The Commissioner argues that the ALJ considered Ms. Laird-Jones' panic attacks and agoraphobia "as part of her overall anxiety disorder." Def.'s Br. 3. The Court disagrees. The Diagnostic and Statistical Manual of Mental Disorders ("DSM-V") distinguishes symptoms of panic disorder from those of generalized anxiety disorder. Further, the Ninth Circuit has noted that characterization of a claimant's mental impairment as anxiety is not sufficient to capture the functional limitations associated with panic disorder. *Hill v. Astrue*, 698 F. 3d 1153, 1161 (9th Cir. 2012) ("Because the ALJ excluded panic disorder from [the claimant's] list of impairments and instead characterized her diagnosis as anxiety alone, the residual functional capacity determination was incomplete, flawed, and not supported by substantial evidence in the record").

The Commissioner further argues that the ALJ accounted for all limitations associated with Ms. Laird-Jones' mental health disorders by limiting her to "occasional interactions with the public and coworkers and simple, routine tasks" in the RFC. *Id.* at 4. The Court also rejects this argument. Although Ms. Laird-Jones' panic disorder is associated with limitations in concentration, persistence, and pace, the record indicates that it also may cause temporary and complete disruptions in her ability to perform any work. *See* AR 372. In sum, while the ALJ properly rejected some evidence of the nature and severity of Ms. Laird-Jones' panic disorder and associated symptoms, he was required to incorporate the credible symptoms of that disorder into the RFC; this he did not do. For these reasons, the ALJ's decision is reversed.

**D.    Credibility Finding**

Ms. Laird-Jones next argues that the ALJ erred by discrediting her subjective symptom testimony. Pl.'s Br. 11-12. There is a two-step process for evaluating the credibility of a

Page 10 – OPINION AND ORDER

claimant's own testimony about the severity and limiting effect of the claimant's symptoms. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir.2009) (citing *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035–36 (9th Cir. 2007)). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Lingenfelter*, 504 F.3d at 1036 (quotation marks and citation omitted). When doing so, the claimant "need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Smolen*, 80 F.3d at 1282.

Second, "if the claimant meets this first test, and there is no evidence of malingering, 'the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.'" *Lingenfelter*, 504 F.3d at 1036 (quoting *Smolen*, 80 F.3d at 1281). It is "not sufficient for the ALJ to make only general findings; he must state which pain testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). Those reasons must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (citing *Bunnell v. Sullivan*, 947 F.2d 341, 345–46 (9th Cir. 1991)).

The ALJ may consider objective medical evidence and the claimant's treatment history, as well as the claimant's daily activities, work record, and observations of physicians and third parties with personal knowledge of the claimant's functional limitations. *Smolen*, 80 F.3d at 1284. The Commissioner recommends assessing the claimant's daily activities; the location, duration, frequency, and intensity of the individual's pain or other symptoms; factors that

Page 11 – OPINION AND ORDER

precipitate and aggravate the symptoms; the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; and any measures other than treatment the individual uses or has used to relieve pain or other symptoms. *See* SSR 96–7p, 1996 WL 374186 (Jul. 2, 1996).

Further, the Ninth Circuit has said that an ALJ "may consider ... ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, ... other testimony by the claimant that appears less than candid [, and] unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment." *Smolen*, 80 F.3d at 1284. The ALJ may not, however, make a negative credibility finding "solely because" the claimant's symptom testimony "is not substantiated affirmatively by objective medical evidence." *Robbins*, 466 F.3d at 883. The ALJ's credibility decision may be upheld overall even if not all of the ALJ's reasons for rejecting the claimant's testimony are upheld. *See Batson*, 359 F.3d at 1197.

Ms. Laird-Jones testified that she had panic attacks once or twice per week that lasted up to an hour for the four years leading up to the hearing. AR 55-56. She stated that she engaged in almost no social activities and wanted to sleep all day. She testified that she had trouble going out alone and that "[n]inety percent of the time" when she goes grocery shopping, she is forced to hurry home without completing her tasks because she does not feel well. AR 57-58. Ms. Laird-Jones testified that the thought of going outside makes her anxious, that she does not keep up with friends, and that she only speaks on the phone with her son and her boyfriend. AR 59. She testified that she was unable to sustain employment due to her anxiety attacks. AR 44.

The ALJ found that the evidence supported a finding that Ms. Laird-Jones had some mental limitations, but rejected her testimony as to the nature and extent of those limitations. AR 27. First, the ALJ found that Ms. Laird-Jones' conservative treatment record contradicted her testimony as to the severity of her mental limitations. *Id.* Conservative treatment can be "sufficient to discount a claimant's testimony regarding [the] severity of an impairment." *Parra v. Astrue*, 481 F.3d 742, 750-51 (9th Cir. 2007). For example, Ms. Laird-Jones experienced relief from symptoms fatigue and slept less while taking vitamin D supplements. AR 353. The success of this over-the-counter, conservative treatment undermines Ms. Laird-Jones' testimony regarding her sleep habits, and therefore provides a clear and convincing reason to discount her credibility. *Parra*, 481 F.3d at 750-51.

Second, the ALJ noted Ms. Laird-Jones' positive response to medications. Impairments that can be controlled with medication are not disabling. *Warre v. Comm'r,* 439 F.3d 1001, 1006 (9th Cir. 2006). Specifically, the ALJ noted that Ms. Laird-Jones' panic attacks were controlled with medication. AR 28. For example, a treatment note from Ms. Toledo in April 2009 stated that Ms. Laird-Jones' "occasional panic attacks [were] controlled" with medication and that, since taking Paxil, Ms. Laird-Jones had "not had panic attacks." AR 354. Ronald Spangler, M.D., also noted in December, 2008, that Ms. Laird-Jones described her sleep and energy level as "good" while on medication. AR 431. On this record, the ALJ reasonably inferred that Ms. Laird-Jones' fatigue and panic disorder were not disabling, as alleged in her testimony. *Warre*, 439 F.3d at 1006.

Third, the ALJ noted that Ms. Laird-Jones failed to follow all of her prescribed treatments. AR 28. An "individual's statements may be less credible if … the medical reports or records show that the individual is not following the treatment as prescribed and there are no

good reasons for this failure." SSR 96-7p, *available at* 1996 WL 374186. Here, the ALJ noted that Ms. Laird-Jones failed to follow the referral from Ms. Toledo for a therapist, despite reporting an increase in her panic attacks. AR 28, 353. This provides additional weight to the ALJ's credibility determination. SSR 96-7p, *available at* 1996 WL 374186.

Fourth, the ALJ found that Ms. Laird-Jones' activities of daily living undermined the credibility of her statements as to the severity of her limitations. AR 28. Evidence of an active lifestyle can undermine a disability claimant's credibility, *Bray*, 554 F.3d at 1226-27, and daily activities that are inconsistent with alleged symptoms are a relevant credibility consideration. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001). The ALJ noted that despite her testimony regarding her severe social and physical limitations, Ms. Laird-Jones cooked for herself, performed chores, attended a birthday party, took weekly shopping trips, spent time with friends, and went out for weekly dinners with her boyfriend. AR 26, 28-29, 257, 259, 373. The record also shows that Ms. Laird-Jones could regularly clean her room, do her own laundry, drive a car and take public transportation, and go out by herself. AR 28, 258. On this record, it was reasonable for the ALJ to infer that some of Ms. Laird-Jones' testimony exaggerated her limitations. Although Ms. Laird-Jones offers an alternative interpretation, the ALJ's evaluation of the evidence was rational and should not be second-guessed. *Batson*, 359 F.3d at 1193; *see also Rollins,* 261 F.3d at 857 (9th Cir. 2001) (even if the consistency of a claimant's daily activities with the claimant's testimony is somewhat equivocal, a court should not second-guess the ALJ's judgment when it is supported by substantial evidence). Thus, the ALJ provided legally sufficient reasons to support his credibility finding.

### E.     Testimony of Ms. Van Dyne

Ms. Laird-Jones also challenges the ALJ's rejection of lay testimony written by her mother, Sandra Van Dyne. The ALJ must to provide "germane reasons" for rejecting lay

Page 14 – OPINION AND ORDER

testimony. 20 C.F.R. §§ 404.1513(d)(1), 416.913(d)(1); *Lewis*, 236 F.3d at 511. The ALJ need not discuss every witness's testimony, and "if the ALJ gives germane reasons for rejecting testimony by one witness, the ALJ need only point to those reasons when rejecting similar testimony by a different witness." *Molina*, 674 F.3d at 1114.

In her written report to the Agency, Ms. Van Dyne stated that Ms. Laird-Jones slept for up to two days straight and needed to be woken up for self-care and household activities. AR 244-45. She also reported that Ms. Laird-Jones is unable to go outside by herself. AR 246.

The ALJ rejected Ms. Van Dyne's opinion because it was inconsistent with other credible evidence in the record. AR 29. Inconsistency with other evidence in the record is a germane reason for rejecting the testimony of a lay witness. *Lewis*, 236 F.3d at 511. Here, the ALJ noted that Ms. Laird-Jones acknowledged an ability to go outside on her own. AR 258. Ms. Laird-Jones also testified that she sometimes slept for up to 14 hours, but nowhere indicated that she ever slept for up to 2 days at a time. AR 29, 45, 52-53, 255, 373. On this record, the ALJ provided germane reasons for rejecting Ms. Van Dyne's testimony, and his conclusion is affirmed. *Molina*, 674 F.3d at 1114.

**F.    RFC Finding**

Ms. Laird-Jones also argues that the ALJ formulated an incorrect RFC. The Court agrees with this argument to the extent that the ALJ failed to incorporate the limitations associated with Ms. Laird-Jones' panic disorder into the RFC. To the extent that the ALJ failed to incorporate limitations alleged in Ms. Laird-Jones' testimony, the statements of Ms. Van Dyne, and the statements of Ms. Toledo, the Court finds no error for the reasons discussed above. *See Batson*, 359 F.3d at 1197 (the ALJ is not required to incorporate limitations into the RFC that he properly finds not credible).

Page 15 – OPINION AND ORDER

### G.     Credit-As-True Doctrine

The decision whether to remand for further proceedings or for immediate payment of benefits is within the discretion of the Court. *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000), *cert. denied*, 531 U.S. 1038 (2000). The issue turns on the utility of further proceedings. A remand for an award of benefits is appropriate when no useful purpose would be served by further administrative proceedings or when the record has been fully developed and the evidence is insufficient to support the Commissioner's decision. *Strauss v. Comm'r*, 635 F.3d 1135, 1138-39 (9th Cir. 2011) (quoting *Benecke v. Barnhart*, 379 F.3d 587, 593 (9th Cir 2004)). The Court may not award benefits punitively and must conduct a "credit-as-true" analysis to determine if a claimant is disabled under the Act. *Id* at 1138.

Under the "credit-as-true" doctrine, evidence should be credited and an immediate award of benefits directed where: (1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited. *Id.* The "credit-as-true" doctrine is not a mandatory rule in the Ninth Circuit, but leaves the court flexibility in determining whether to enter an award of benefits upon reversing the Commissioner's decision. *Connett v. Barnhart*, 340 F.3d 871, 876 (9th Cir. 2003) (citing *Bunnell*, 947 F.2d at 348. The reviewing court should decline to credit testimony when "outstanding issues" remain. *Luna v. Astrue*, 623 F.3d 1032, 1035 (9th Cir. 2010).

Here, the ALJ failed to provide legally sufficient reason for rejecting Dr. Bates-Smith's diagnosis of panic disorder and failed to incorporate the limitations associated with panic disorder into the RFC. The ALJ should thus be given the opportunity to consider the credible

Page 16 – OPINION AND ORDER

extent of those limitations, incorporate them into the RFC, and take new testimony from a vocational expert regarding Ms. Laird-Jones' ability to perform jobs that exist in significant numbers in the national economy. Because there are outstanding issues that must be resolved before a determination of disability can be made, the case is remanded for further proceedings consistent with this opinion.

## IV. CONCLUSION

The Commissioner's decision that Ms. Laird-Jones is capable of performing light work was not supported by substantial evidence in the record. It is therefore REVERSED and REMANDED for further proceedings consistent with this opinion.

DATED this 14th day of May, 2014.

/s/ Michael H. Simon
Michael H. Simon
United States District Judge

Page 17 – OPINION AND ORDER